UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

MAHALIZA, INC., a Florida corporation, and
MAHLIZA, INC., a Florida corporation,

    Plaintiffs,

vs.                                            Case No. _____

7-ELEVEN, INC., a Texas Corporation,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, MAHALIZA, INC. and MAHLIZA, INC. (collectively, "Plaintiffs"), by and through undersigned counsel, hereby sue Defendant, 7-ELEVEN, INC. ("7-Eleven"), and in support thereof, states as follows:

### Parties, Jurisdiction and Venue

1.    Plaintiff, MAHALIZA, INC. ("Mahaliza"), is a Florida corporation having its principal place of business in the State of Florida.

2.    Plaintiff, MAHLIZA, INC. ("Mahliza") is a Florida corporation having a principal place of business in the State of Florida.

3.    Defendant, 7-ELEVEN, INC., is a Texas corporation having a principal place of business in the State of Texas.

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00, exclusive of costs, interest and reasonable attorneys' fees.

5.    This Court has personal jurisdiction over 7-Eleven pursuant to Fla. Stat. §48.193

(2013) because 7-Eleven operates, conducts, engages in and carries on business within the State of Florida; engages in substantial and not isolated activity within Florida and engaged in the wrongful acts that are the subject of this lawsuit in the State of Florida.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because a substantial portion of the events giving rise to the claims herein alleged occurred in this District. Venue is also proper in this judicial district pursuant to Paragraph 28 of the underlying Franchise Agreements.

## General Allegations

7. 7-Eleven is the franchisor of a system of extended-hour retail convenience stores under the trade name and service mark "7-Eleven®".

8. Some 7-Eleven retail stores are owned and operated by franchisees pursuant to franchise agreements executed between the franchisee and 7-Eleven. 7-Eleven also operates corporate owned 7-Eleven retail stores across the United States.

9. In addition, 7-Eleven sells gasoline retail convenience stores irrespective of whether the store is corporate or franchise owned.

10. Where gasoline is offered for sale through a franchise owned retail convenience store, in addition to a franchise agreement, 7-Eleven and the franchisee enter into a separate agreement regarding gasoline pursuant to which 7-Eleven consigns to the franchisee the right to sell gasoline that is owned by 7-Eleven.

11. In exchange for the franchisees' service in selling gasoline for the benefit of 7-Eleven, 7-Eleven pays franchisees a small commission on the sale of each gallon of gasoline.

12. 7-Eleven encourages potential franchisees to agree to the gasoline agreement through an elaborate sales pitch in which 7-Eleven consistently maintains the profitability of

gasoline and the overall sales potential of a retail store that has a gasoline option.

13.     Put another way, 7-Eleven urges potential franchisees to offer gasoline for sale in order to drive in business to the retail store where the franchisee makes a substantially larger return on the sale of products.

14.     During the period from February 2008 through March 2012, Plaintiffs executed the following four (4) franchise agreements with 7-Eleven:

| **Date** | **Location** | **Store No.** |
|---|---|---|
| February 28, 2008 | 5615 University Drive<br>Coral Springs, Florida | 1532-32773A |
| October 1, 2009 | 9998 Sunset Strip<br>Sunrise, FL 33322 | 1534-32678A |
| November 7, 2011 | 1545 NE 4th Avenue<br>Fort Lauderdale, FL 33304 | 1534-25357A |
| March 29, 2012 | 3800 N. Andrews Avenue<br>Oakland Park, FL 33309 | 1534-24350A |

(collectively, the "Franchise Agreements').[1]

15.     In connection with the execution of each Franchise Agreement, the respective Plaintiff and 7-Eleven also executed a Consigned Gasoline Amendment for each location (collectively, the "Consigned Gasoline Amendments").

16.     The Consigned Gasoline Amendments provide, in pertinent part, as follows:

> We retain title to the Consigned Gasoline until you sell it.  The Consigned Gasoline will at all time be subject to our direction and control. . . . **You must sell the Consigned Gasoline at retail prices that we establish, *in our sole discretion*, from time to time**. . . .
>
> \*          \*          \*          \*          \*

---

[1] All four (4) franchise agreements are identical in all material respects. A copy of one (1) Franchise Agreement is annexed hereto as Exhibit "A." Mahliza entered into the Franchise Agreements for stores 1532-32773 and 1534-24350. Mahaliza entered into the Franchise Agreements for stores 1534-25357 and 1534-24350.

> Your Responsibilities. You will be responsible, at your expense, for all labor required to promote and sell Consigned Gasoline, including, but not limited to, that necessary to operate the Gasoline Equipment. You agree to clean and care for the Gasoline Sales Area, to measure the gasoline in the tanks before and after each delivery, to conduct pricing surveys of gasoline competitors, to change the posted prices of gasoline at the Store, and to conduct other functions we require to promote and sell Consigned Gasoline.
>
> \*    \*    \*    \*    \*
>
> Our Responsibilities. We will pay at our expense, for all utilities you use in connection with the Gasoline Sales Area, all taxes relating to the Gasoline Sales Area and Gasoline Equipment, all permits necessary to install or operate the Gasoline Equipment, all labor and materials necessary to maintain and repair the Gasoline Equipment (unless occasioned by the negligence or willful misconduct or you or your agents, representatives or employees), and all loss or damage to the Consigned Gasoline resulting from fire, theft from gasoline storage tanks, adulteration, seepage, acts of God and other causes (unless caused by the negligence or willful misconduct of you or your agents, representatives or employees). We will have no liability for any failure to provide gasoline to you, regardless of the reason for the failure and even if there is no reason for the failure.
>
> \*    \*    \*    \*    \*
>
> Gasoline Commission. As compensation for your promotion and sale of the Consigned Gasoline and for your responsibilities related to the Gasoline Sales Area and the Gasoline Equipment, we will pay you a commission (the "Gasoline Commission") each Accounting Period. The Gasoline Commission will be an amount equal to the number of gallons of the Consigned Gasoline you sell during each Accounting Period (as reflected by the pump meter reading) times $.015. We will credit the Gasoline Commission to your Open Account at the end of each Accounting Period.

*See* Consigned Gasoline Amendment,[2] ¶¶5(a), 6, 7 and 9.

17.     Plaintiffs only entered into the Consigned Gasoline Amendments because 7-Eleven, through its representatives, explicitly advised Plaintiffs' principal, Mr. Zahid Anwar, that each location would make a tremendous amount of money on the sale of gasoline and that gasoline

---

[2] All four (4) Consigned Gasoline Amendments are identical in all material respects, with the exception of commission that is $.010 in the 2008 Consigned Gasoline Amendment. A copy of one Consigned Gasoline Amendment is annexed hereto as Exhibit "B."

4

sales would drive in-store product sales by increasing customer traffic.

18. As it relates to increased customer traffic, 7-Eleven advised Mr. Anwar that 7-Eleven would competitively price gasoline with other near-by gasoline stations so that the gasoline price would entice customers to stop at Plaintiffs' 7-Eleven franchised stores for gasoline and, while they were stopping for gasoline, make product purchases.

19. Specifically, 7-Eleven advised Mr. Anwar about a tiered pricing structure whereby 7-Eleven would price its gasoline between one and two cents ($.01 - $.02) lower than branded gasoline outlets like Mobil, Shell and Amoco.

20. 7-Eleven also advised Mr. Anwar that it would match the prices of nearby unbranded gasoline outlets like Valero and U-Gasoline. If 7-Eleven priced the gasoline higher than that of an unbranded outlet, 7-Eleven agreed only to exceed the unbranded price by one or two cents.

21. 7-Eleven has not honored its agreement to maintain competitive gasoline prices despite 7-Eleven's agreement and oral assurances regarding same.

22. Within the last few years, 7-Eleven has increased its gasoline prices well over that of competitors near Plaintiffs' franchised locations.

23. For example, Store No. 1532-32773A, which is located at 5615 University Drive Coral Springs, Florida, faces competition from at least four (4) nearby branded gasoline stations and one (1) unbranded gasoline station. Specifically, Store No. 1532-32773A faces competition from:

    a. A Chevron gasoline station located immediately across the street;

    b. A Chevron gasoline station located about one (1) mile away;

    c. A Mobil gasoline station located at 9250 Wiles Road, which used to be a 7-

        Eleven gasoline station;[3]

    d. A Shell gasoline station; and

    e. A Valero gasoline station located less than one (1) away, which offers unbranded gasoline.

24. In addition, Store No. 1532-32773A faces competition from another 7-Eleven outlet located approximately 2.5 miles away.

25. The gasoline prices that 7-Eleven mandates for Store No. 1532-32773A nearly always exceed the prices of the competitors.

26. For example, on January 13, 2016, Mahliza notified 7-Eleven that the nearby Valero gasoline station offered gasoline for four cents ($.04) cheaper with 7-Eleven's prices at $2.05 and Valero's gasoline prices at $1.99.

27. On January 19, 2016, Mahliza notified 7-Eleven that the nearby Valero gasoline station offered gasoline for ten cents ($.10) cheaper with 7-Eleven's prices at $1.99 and Valero's gasoline prices at $1.89. By January 19, 2016, Valero's prices had been ten cents ($.10) cheaper than 7-Eleven's for a week.

28. Customers consistently complained to Mahliza about 7-Eleven's inflated gasoline prices.

29. Mahliza notified 7-Eleven of the customers' gasoline price complaints. Indeed, it is well known in the gasoline industry that consumers will drive out of their way in order to purchase gasoline at the most economical price.

30. In light of the high gasoline prices, sales at Store No. 1532-32773A decreased over

---

[3] When the gasoline station was operated as a 7-Eleven, it offered prices below the prices 7-Eleven mandated for Store No. 1532-3277A.

6

**ZARCO EINHORN SALKOWSKI & BRITO**
**MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428**

4% in the weekly period where 7-Eleven's gasoline prices exceeded Valero's prices by nine cents ($.09) or more when compared to sales for the prior year.

31. Mahliza consistently requested that 7-Eleven consider the reasonable market price and set its prices accordingly. At a bare minimum, and if nothing else, Mahliza requested that 7-Eleven set its prices based on the standards that it previously articulated.

32. 7-Eleven refused to accommodate Mahliza's pricing requests.

33. Each of Plaintiffs' other 7-Eleven stores have experienced and continue to experience similar competition and treatment from 7-Eleven.

34. Store No. 1534-32678A is located at 9998 Sunset Strip, Sunrise, FL 33322.

35. Store No. 1534-32678A faces competition from at least four (4) nearby branded gasoline stations, one (1) unbranded gasoline station and two (2) 7-Eleven gasoline stations.

36. Specifically, Store No. 1532-32678A faces competition from:

   a. A BP Amoco gasoline station located across the street;

   b. A 7-Eleven gasoline station and retail store located 3.5 miles away;[4]

   c. A Chevron gasoline station located 1.4 miles away;

   d. A Marathon gasoline station located 1.4 miles away;

   e. A Mobil gasoline station located 3.8 miles away;

   f. A Valero gasoline station located 2.6 miles away; and

   g. A 7-Eleven gasoline station and retail store located 3 miles away;[5]

---

[4] This 7-Eleven gasoline station regularly offered gasoline for sale at prices that were at least ten cents ($.10) cheaper than the gasoline prices that 7-Eleven established for Mahaliza's Store No. 1532-32678A.

[5] This 7-Eleven gasoline station regularly offered gasoline for sale at prices between five and ten cents ($.05 - $.10) cheaper than the gasoline prices that 7-Eleven established for Mahaliza's Store No. 1532-32678A.

37. Like Store No. 1532-32773A, the gasoline prices that 7-Eleven mandates for Store No. 1532-32678A nearly always exceed the prices of the competitors.

38. For example, on February 11, 2016, Mahliza notified 7-Eleven that the gasoline prices were ten cents ($.10) higher than the BP Amoco located across the street. 7-Eleven mandated that Mahliza sell gasoline at $1.88 per gallon while BP Amoco sold its gasoline for $1.86 per gallon.

39. Mahliza notified 7-Eleven that gasoline sales were down six percent (6%) as a result of the pricing issues.

40. Mahliza requested that 7-Eleven review its gasoline prices and set a competitive price for Store No. 1532-32678A.

41. 7-Eleven did not respond to Mahliza's request.

42. Between February 11, 2016 and March 7, 2016, Mahliza's losses had increased from six percent (6%) to seven percent (7%).

43. On March 7, 2016, Mahliza notified 7-Eleven that it continued to experience substantial gasoline related losses.

44. On March 28, 2016, Mahliza notified 7-Eleven, yet again, of issues with the mandated gasoline prices. 7-Eleven required Mahliza to sell gasoline at a rate of $2.13 while none of the other gasoline stations in the area exceeded $2.09.

45. Mahliza requested that 7-Eleven reconsider and lower the prices.

46. The situation is more of the same for Store Nos. 1534-25357A and 1534-24350A.

47. Store No. 1534-25357A is located at 1545 NE 4th Avenue, Fort Lauderdale, FL 33304.

48. Store No. 1534-25357A faces competition from at least two (2) nearby branded

gasoline stations, two (2) unbranded gasoline stations and one (1) 7-Eleven gasoline station.

49. Specifically, Store No. 1532-25357A faces competition from:

    a. A Texaco gas station;

    b. A Sunoco station located less than half (.5) miles away;

    c. A 7-Eleven gas station and retail store located less than two (2) miles away;[6]

    d. A Valero gas station located less than two (2) miles away; and

    e. A U-Gas gas station located less than two (2) miles away.

50. Like Store Nos. 1532-32773A and 1532-32678A, the gasoline prices that 7-Eleven mandates for Store No. 1534-25357A nearly always exceed the prices of the competitors.

51. On January 13, 2016, Mahaliza notified 7-Eleven that the gasoline prices mandated for Store No. 1532-25357A exceeded two (2) nearby competitors.

52. Adding insult to injury, the prices that 7-Eleven mandated for Mahaliza exceeded the prices set for the nearby competing 7-Eleven store.

53. In particular, 7-Eleven mandated that Store No. 1532-32678A sell gas at $1.99 per gallon while Valero set prices at $1.93 per gallon and the nearby 7-Eleven store sold gas at $1.95 per gallon.

54. Mahaliza notified 7-Eleven that merchandise sales dropped by twenty-one percent (21%) and gasoline sales dropped twenty-two percent (22%) as a result of the excessive gasoline prices established for the store by 7-Eleven when compared to sales for the prior year.

55. Despite Mahaliza's requests, 7-Eleven did not make any pricing adjustments.

56. On May 2, 2016, Mahaliza again notified 7-Eleven of pricing issues. At that time,

---

[6] This 7-Eleven gasoline station regularly offered gasoline for sale at prices between five and ten cents ($.05 - $.10) cheaper than the gasoline prices that 7-Eleven established for Mahaliza's Store No. 1543-25357A.

9

**ZARCO EINHORN SALKOWSKI & BRITO**
**MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428**

7-Eleven mandated that Store No. 1532-32678A sell gas at $2.24 per gallon. Both Valero and the other 7-Eleven store located nearby sold gas at a rate of $2.19 cents per gallon.

57. Mahaliza specifically advised 7-Eleven that the high prices were impacting customer traffic and sales because consumers would view the high pricing advertised on the monument signs, as required by 7-Eleven and elect to get gas and shop at a different 7-Eleven or other gas station nearby.

58. Mahaliza requested that 7-Eleven reconsider the pricing.

59. 7-Eleven did not respond to Mahaliza's request.

60. Store No. 1534-24350A is located at 3800 N. Andrews Avenue, Oakland Park, Florida 33309.

61. Store No. 1534-24350A faces competition from two (2) branded gasoline stores, one (1) unbranded gasoline store and two (2) 7-Eleven stores.

62. Specifically, Store No. 1534-24350A faces competition from:

   a. A Speedway gasoline station less than half (.5) of a mile away;

   b. A Amoco gasoline station half (.5) of a mile away;

   c. A U-Gas gasoline station under a mile away;

   d. A 7-Eleven retail store and gasoline station located less than three (3) miles away.[7]

   e. A 7-Eleven retail store and gasoline station less than two (2) miles away.

63. Gas prices offered by Store No. 1543-24350A's competitors nearly always exceeded the price mandated by 7-Eleven.

---

[7] This 7-Eleven gasoline station regularly offered gasoline for sale at prices cheaper than the gasoline prices that 7-Eleven established for Mahaliza's Store No. 1534-24350A. Customers regularly complained claiming that Mahaliza, as a franchise location, was intentionally charging higher prices to profit the franchisee. 7-Eleven' pricing policy ruined Mahaliza's business reputation in the area.

10

**ZARCO EINHORN SALKOWSKI & BRITO**
**MIAMI TOWER, 100 S.E. 2ND STREET, 27TH FLOOR, MIAMI, FLORIDA 33131 (305) 374-5418 FAX (305) 374-5428**

64. On March 4, 2016, Mahaliza notified 7-Eleven that the pries established for Store No. 1533-24350A exceeded the prices of the nearby Speedway and U-Gas. Store No. 1534-24350A's required prices were $1.91 per gallon while Speedway's price was $1.89 per gallon and U-Gas' price was $1.73 per gallon.

65. Mahaliza notified 7-Eleven that as a result of the lack of competitive pricing on gasoline, Store No. 1534-24350A experienced an eleven percent (11%) decrease in gas sales and a six percent (6%) drop in merchandise sales when compared to sales for the prior year.

66. Mahaliza requested that gasoline pricing be revisited.

67. 7-Eleven did not respond to Mahaliza's request.

68. Gasoline pricing issues like those reflected in Paragraphs 18-67, *supra*, where the prices 7-Eleven mandated for Mahaliza's franchises exceeded competitors in the market occurred regularly.

69. Indeed, despite the fact that the Consigned Gasoline Amendments award discretion to 7-Eleven vis-à-vis establishing gasoline prices, 7-Eleven is required to exercise its discretion in a reasonably commercial manner and so not as to intentionally injure Plaintiffs. As a result of 7-Eleven's failure to exercise its discretion in a reasonably commercial manner and, instead engage in predatory pricing, each of Plaintiffs' franchised locations experienced substantial losses from the sale of gasoline.

70. In fact, other 7-Eleven franchisees and corporate stores in the vicinity of Plaintiffs' franchised locations enjoy more favorable pricing.

71. None of the 7-Eleven gasoline executives and employees would respond to Plaintiffs' requests for price evaluations.

72. Instead, Plaintiffs' 7-Eleven field executive approached the manager in two (2) of

Plaintiffs' stores and offered to arrange reduced gasoline prices if the managers reduced prices of retail items in the retail store.

73. Plaintiffs' Franchise Agreements provide that the franchisee, not 7-Eleven, has discretion regarding pricing within the retail store.

74. 7-Eleven knowingly and intentionally raised Plaintiffs' gasoline prices such that the prices offered were not competitive in the area.

75. At the same time, 7-Eleven increased Plaintiffs' obligations regarding servicing the gasoline sales area and caused Plaintiffs to incur substantial additional administrative costs without increasing Plaintiffs' commission on the gasoline sales.

76. For example, 7-Eleven failed to adequately maintain the image of the gasoline pumps by failing to keep them adequately maintained with regular power washing.

77. 7-Eleven controlled prices and intentionally inflated same and pushed the cost of sales onto Plaintiffs, thereby, increasing its profit margins at Plaintiff's expense.

78. Upon information and belief, 7-Eleven is financially motivated to increase gasoline prices despite the competitive effect on Plaintiffs in light of the fact that 7-Eleven make substantial profit margin from the sale of gasoline such that selling gasoline at an increased price is still more profitable for 7-Eleven then selling more gas at a lower price.

79. All conditions precedent to bringing this action have been waived, excused, performed, or otherwise occurred.

80. As a result of Defendant's wrongful conduct, described herein, and Plaintiffs' need to protect and enforce their legal rights, Plaintiffs have retained the undersigned attorneys and are obligated to pay said firm attorneys' fees. Pursuant to applicable Florida law, Plaintiffs seeks to recover their attorneys' fees and costs from 7-Eleven.

## LEGAL CAUSES OF ACTION

### Count I – Breach Of Consigned Gasoline Amendment

81. Mahaliza incorporates each and every allegation set forth in Paragraphs 1 through 22 and 46 - 80, *supra*, as if fully set forth herein.

82. Instead of exercising its discretion in a commercially reasonable manner like it is required to do so, 7-Eleven established prices for Mahaliza's franchised locations that were not competitive in the area and often exceeded prices established for other franchisees and corporate owned stores.

83. 7-Eleven increased Mahaliza's obligations regarding servicing the gasoline sales area and caused Mahaliza to incur substantial additional costs without increasing Mahaliza's commission on the gasoline sales.

84. 7-Eleven intentionally shifted its cost responsibilities to Mahaliza in violation of the Consigned Gasoline Amendments.

85. As a direct, proximate and foreseeable result of 7-Eleven's material breaches of Paragraph 5(a) of the Consigned Gasoline Amendment, Mahaliza has suffered and continues to suffer substantial damages.

### Count II – Breach Of The Implied Covenant Of Good Faith And Fair Dealing

86. Mahaliza incorporates each and every allegation set forth in Paragraphs 1 through 22, 46 - 80, 82-85, *supra*, as if fully set forth herein.

87. The Consigned Gasoline Amendment gives rise to express obligations and also give rise to a mutual implied covenant of good faith and fair dealing between the parties.

88. Under this covenant, each party has an obligation and duty to act fairly towards the other, to do nothing destructive of the other party's right to enjoy the fruits of the contract, and to do everything that the contract presupposes they will do to accomplish its purpose.

89. At the time Mahaliza began entering into Consigned Gasoline Amendments, 7-Eleven proscribed its own standard of how it would price gasoline.

90. Subsequent to the entry of the Consigned Gasoline Amendments, 7-Eleven intentionally violated its own pricing policy and standard and forced Mahaliza to sell gasoline at artificially inflated prices.

91. Through its actions, as fully set forth in Paragraphs 18 – 22, 46 – 67, *supra*, 7-Eleven abused its discretionary authority under the Consigned Gasoline Amendment, failed to exercise such authority in good faith and in a commercially reasonable manner, and dealt with Mahaliza in bad faith, in an unfair manner and in contravention of the intention and spirit of the parties' business relationship.

92. 7-Eleven's conduct as described herein constitutes numerous willful, malicious breaches of its implied duty of good faith and fair dealing.

93. As a direct, proximate, and foreseeable consequence of 7-Eleven's breach of the implied covenant of good faith and fair dealing, Mahaliza has suffered and continues to suffer substantial damages.

### Count III – Breach Of Consigned Gasoline Amendment

94. Mahliza incorporates each and every allegation set forth in Paragraphs 1 through 45 and 68 - 80, *supra*, as if fully set forth herein.

95. Instead of exercising its discretion in a commercially reasonable manner like it is required to do so, 7-Eleven established prices for Mahliza's franchised locations that were not

competitive in the area and often exceeded prices established for other franchisees and corporate owned stores.

96. 7-Eleven increased Mahliza's obligations regarding servicing the gasoline sales area and caused Mahliza to incur substantial additional costs without increasing Mahliza's commission on the gasoline sales.

97. 7-Eleven intentionally shifted its cost responsibilities to Mahliza in violation of the Consigned Gasoline Amendments.

98. As a direct, proximate and foreseeable result of 7-Eleven's material breaches of Paragraph 5(a) of the Consigned Gasoline Amendment, Mahaliza has suffered and continues to suffer substantial damages.

### Count IV – Breach Of The Implied Covenant Of Good Faith And Fair Dealing

99. Mahliza incorporates each and every allegation set forth in Paragraphs 1 through 45, 46 – 80 and 95 – 98, *supra*, as if fully set forth herein.

100. The Consigned Gasoline Amendment gives rise to express obligations and also give rise to a mutual implied covenant of good faith and fair dealing between the parties.

101. Under this covenant, each party has an obligation and duty to act fairly towards the other, to do nothing destructive of the other party's right to enjoy the fruits of the contract, and to do everything that the contract presupposes they will do to accomplish its purpose.

102. At the time Mahliza began entering into Consigned Gasoline Amendments, 7-Eleven proscribed its own standard of how it would price gasoline.

103. Subsequent to the entry of the Consigned Gasoline Amendments, 7-Eleven intentionally violated its own pricing policy and standard and forced Mahliza to sell gasoline at artificially inflated prices.

104. Through its actions, as fully set forth in Paragraphs 18 – 45, 46 – 79, *supra*, 7-Eleven abused its discretionary authority under the Consigned Gasoline Amendment, failed to exercise such authority in good faith and in a commercially reasonable manner, and dealt with Mahliza in bad faith, in an unfair manner and in contravention of the intention and spirit of the parties' business relationship.

105. 7-Eleven's conduct as described herein constitutes numerous willful, malicious breaches of its implied duty of good faith and fair dealing.

106. As a direct, proximate, and foreseeable consequence of 7-Eleven's breach of the implied covenant of good faith and fair dealing, Mahliza has suffered and continues to suffer substantial damages.

### Count V – Violation Of The Florida Deceptive And Unfair Trade Practices Act

107. Mahaliza incorporates each and every allegation set forth in Paragraphs 1 through 22, 46 – 80, *supra*, as if fully set forth herein.

108. This is an action for violation of the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201, *et seq*. ("FDUTPA").

109. 7-Eleven, as a franchisor, is engaged in the conduct of trade and commerce in the State of Florida.

110. 7-Eleven intentionally inflated the gasoline prices mandated for Mahaliza's franchise locations over and above the competition in the area of each franchise location.

111. 7-Eleven affected commerce and competition by using Mahaliza's artificially high prices to drive customers to other 7-Eleven stores, be they corporate owned or owed by other franchisees.

112. Consumers were affected by 7-Eleven's pricing and consistently complained to

Mahaliza. Indeed, in one of Mahaliza's stores, customers accused Mahaliza of price manipulation.

113. 7-Eleven's actions constitute unlawful and unfair methods of sale and competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of section 501.204, Florida Statutes.

114. 7-Eleven unlawfully and intentionally engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of section 501.203(3), Florida Statutes in light of the intentional scheme of price manipulation.

115. As a direct, proximate and foreseeable result of 7-Eleven's violations of the FDUTPA, Mahaliza has suffered and continues to suffer substantial damages equal to the loss in sales and overall losses from the sale of gasoline.

116. Pursuant to Fla. Stat. § 501.2105, Mahaliza is entitled to recover its reasonable attorneys' fees and costs from Defendant.

**Count VI – Violation Of The Florida Deceptive And Unfair Trade Practices Act**

117. Mahliza incorporates each and every allegation set forth in Paragraphs 1 through 45, 68 – 80, *supra*, as if fully set forth herein.

118. This is an action for violation of FDUPTA.

119. 7-Eleven, as a franchisor, is engaged in the conduct of trade and commerce in the State of Florida.

120. 7-Eleven intentionally inflated the gasoline prices mandated for Mahliza's franchise locations over and above the competition in the area of each franchise location.

121. 7-Eleven affected commerce and competition by using Mahliza's artificially high prices to drive customers to other 7-Eleven stores, be they corporate owned or owed by other

franchisees.

122. Consumers were affected by 7-Eleven's pricing and consistently complained to Mahliza. Indeed, in one of Mahliza's stores, customers accused Mahliza of price manipulation.

123. 7-Eleven's actions constitute unlawful and unfair methods of sale and competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. §501.204.

124. 7-Eleven unlawfully and intentionally engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. §501.203(3) in light of the intentional scheme of price manipulation.

125. As a direct, proximate and foreseeable result of 7-Eleven's violations of the FDUTPA, Mahliza suffered and continue to suffer substantial damages equal to the loss in sales and overall losses from the sale of gasoline.

126. Pursuant to Fla. Stat. §501.2105, Mahliza is entitled to recover their reasonable attorneys' fees and costs from Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mahaliza, Inc. and Mahliza, Inc. respectfully, demand judgment of: (a) damages in a sum to be determined by the court; (b) punitive damages; (c) interest; (d) attorneys' fees and the costs and disbursements of this action; and (e) such and other and further relief as to this court may seem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, MAHALIZA, INC. and MAHLIZA, INC., respectfully request a trial by jury on all claims so triable.

Respectfully submitted,

ZARCO EINHORN SALKOWSKI & BRITO,
*Counsel for Plaintiff*
Miami Tower
100 S.E. 2nd Street, Suite 2700
Miami, Florida  33131-2193
Telephone:  (305) 374-5418
Telecopier:  (305) 374-5428

By:  s/ Himanshu M. Patel
ROBERT ZARCO
Florida Bar No. 502138
E-mail: rzarco@zarcolaw.com
HIMANSHU M. PATEL
Florida Bar No. 0167223
E-mail: hpatel@zarcolaw.com
E-mail: acoro@zarcolaw.com
ALAINA B. SIMINOVSKY
Florida Bar No. 70644
E-mail: asiminovsky@zarcolaw.com